IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                    Criminal No. 3:16cr46

DAZZMOND T. HAWTHORNE

**MEMORANDUM OPINION**

This matter is before the Court on the defendant's Motion for Compassionate Release Pursuant to Section 603(b) of the First Step Act (ECF No. 32), the RESPONSE OF THE UNITED STATES IN OPPOSITION TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE (ECF No. 40), and the Defendant's Reply Memorandum in Support of Motion for Compassionate Release Pursuant to Section 603(b) of the First Step Act (ECF No. 34). Having considered those papers, the Presentence Report, the file, and the record submitted with the defendant's motion, the defendant's Motion for Compassionate Release Pursuant to Section 603(b) of the First Step Act (ECF No. 32) will be denied.

**BACKGROUND**

Dazzmond T. Hawthorne, while serving a period of good behavior for conviction of robbery of a business with a gun in 2019, committed two robberies which led to his convictions in this case. The first one was on March 2, 2016. The second was on March 16,

2016. As a result, he was convicted, upon pleas of guilty, of two counts of interference with commerce by robbery in violation of 18 U.S.C. § 1951(a).

Hawthorne's role in the first robbery was to serve as the getaway driver. In the commission of the robbery, Hawthorne's confederates used weapons to force the clerk of the gas station to lie on the ground and then pistol whipped the clerk when he was unable to open the safe. The defendant actually committed the second robbery and, in so doing, brandished a semi-automatic pistol.

Hawthorne's confinement guideline range was 87 to 100 months. His Criminal History Category was III.

On July 21, 2016, Hawthorne was sentenced to 100 months of imprisonment. He has served slightly more than 60 months of that sentence, and his projected release date is April 23, 2023. While in prison, Hawthorne has taken advantage of a significant number of programs and has worked extensively in UNICOR and elsewhere and has paid the amount of restitution and special assessment fixed by the judgment in his case.

Hawthorne is confined at Petersburg Medium FCI which was home to 1,502 inmates as of April 6, 2021. As respects COVID-19, Hawthorne was designated as a high risk inmate because he suffered from asthma, and he has received both doses of the Pfizer BioNTech

2

COVID-19 vaccine. As of April 6, 2021, 534 inmates had been fully vaccinated and the facility expected to inoculate another 300 inmates at that location in the ensuing week. (ECF No. 45).

## DISCUSSION

The applicable statute, 18 U.S.C. § 3582(c)(1)(A), provides, in pertinent part, that, upon appropriate motion, the Court "may reduce the term of imprisonment . . . if it finds that 'extraordinary and compelling reasons' warrant such a reduction." It is settled that the burden is on the defendant to prove that extraordinary and compelling reasons exist for compassionate release under § 3582(c)(1)(A)(i). United States v. White, 378 F. Supp.3 784, 785 (W.D. Mo. 2019).

The "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering the Bureau of Prison's statutory role, and extensive professional efforts to curtail the virus' spread. United States v. Raia, 954 F.3d 594, 597 (3rd Cir. 2020). In assessing whether the record shows the existence of extraordinary and compelling reasons for compassionate release, courts consider, inter alia, the guidance of the CDC, and non-binding policy statements of the United States Sentencing Guidelines. See United States v. Beck, 425 F. Supp. 3d 573, 581-82 (M.D.N.C. 2019). The policy statements

are not binding but are informative and may be considered. United States v. McCoy, 981 F.3d 271, 276 (4th Cir. 2020). The cases teach that, to constitute extraordinary and compelling reasons for compassionate release, medical conditions must be serious. Also, it is generally true that "chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." United States v. Ayon-Nunez, No. 1:16-cr-130, 2020 WL 704785, at *2-3 (E.D. Cal. Feb. 12, 2020).

To establish existence of "extraordinary and compelling" reasons for compassionate release because of COVID-19, the defendant must show "both a particularized susceptibility to the disease and a particularized risk of contracting the disease at [his] prison facility." United States v. White, ____ F. Supp.3d ____, 2020 WL 1906845, at *1 (E.D. Va. April 23, 2020) (quoting United States v. Feiling, 453 F. Supp.3d 832, 840 (E.D. Va. 2020)).

1. **Particularized Susceptibility**

The defendant has established that he suffers from asthma. The BOP has treated him as high risk because of that so that he would receive the COVID-19 vaccine. He also experiences epidsodic sharp chest pains of unidentified origin. However, the fact that a defendant has established a higher susceptibility to COVID-19 does not resolve the particularized susceptibility requirement because identified risk factor conditions must be serious to

constitute extraordinary and compelling reasons. It appears from the record that the conditions on which Hawthorne bases his motion are "chronic conditions that can be managed in prison [and thus] are not a sufficient basis for compassionate release." United States v. Ayon-Nunez, No. 1:16-cr-130, 2020 WL 704785, at *2-3 (E.D. Cal. Feb. 12, 2020). In addition, Hawthorne has not established that his medical needs cannot be met while incarcerated and, indeed, the medical records filed herein outline that he receives regular medical care, adjustment of his medications, and testing related to the chronic health issues.

In his reply brief, Hawthorne minimizes the fact that he has received both doses of the Pfizer BioNTech vaccine, arguing that: (i) there is insufficient evidence of how long the vaccine will last; (ii) the vaccine is less effective against variants; and (iii) variants surely will come to Virginia (where Hawthorne is confined). Those speculative points do not change the fact that Hawthorne has received the vaccine that has been shown to be effective. Nor do they take into account that, by now, over half the population of his facility will have received the vaccine. More importantly, the record shows that Hawthorne's chronic conditions are being effectively dealt with in prison.

In sum, Hawthorne has not met the particularized susceptibility risk facet of the applicable test.

5

### 2. Particularized Facility Risk

Nor has Hawthorne met the particularized facility risk component of the appropriate test. His motion cites press releases respecting the instances of COVID-19 among inmates and staff at BOP facilities nationwide, but provides no real evidentiary support of a particularized risk of contracting the disease at Petersburg Medium FCI, the defendant's facility of incarceration. Further, the record reflects that, at the time of the filing of the Government's papers, Petersburg Medium FCI had 12 active case of COVID-19,[1] 12 active cases of COVID-19 among staff, and 253 inmates and 8 staff members who had previously recovered from COVID-19. Sadly, there has been one inmate death, but that alone does not detract from the basic conclusion that the facility is managing the COVID-19 situation well. In addition, all inmates who have tested positive are being appropriately treated and isolated in accord with the appropriate CDC guidelines that have been adopted by the Bureau of Prisons.

### 3. Assessment Under 18 U.S.C. § 3553(a)

But, even if Hawthorne had met the particularized risk assessment and the particularized facility assessment (which he has not), it would be appropriate to deny compassionate release in perspective of the sentencing factors prescribed by 18 U.S.C. §

---

[1] On that date the inmate population was 1,492.

3553(a). Compassionate release, of course, is appropriate only where the defendant is not a danger to the safety of any other person or of the community. The defendant implies, in oblique language, that he is not a danger to the community because, according to Hawthorne's handwritten statement, his educational and work efforts "demonstrate a mental commitment to change, backed up by actions consistent with that change." (ECF No. 32, p. 13).

Indeed, Hawthorne's rehabilitative efforts and attitude are commendable. But, his record is one of violent crime and that cannot be offset by those very good post-conviction efforts when assessing what is needed to protect the public and to deter Hawthorne. That is especially so considering that Hawthorne received a lenient sentence for his first robbery, then committed the two robberies for which he is now serving a sentence while he was on a sentence of good behavior.

Prudence and reason inform that the current sentence serves the ends of the sentencing statute (18 U.S.C. § 3553(a)), and is necessary to deter Hawthorne and to protect the public when he is released in 2023.

7

## CONCLUSION

For the foregoing reasons, the defendant's Motion for Compassionate Release Pursuant to Section 603(b) of the First Step Act (ECF No. 32) will be denied.

It is so ORDERED.

                                         /s/   *REP*
                         Robert E. Payne
                         Senior United States District Judge

Richmond, Virginia
Date: May 12, 2021